**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

NORMAN B. CALVERT, also known as
Caprice,

                            Plaintiff,

       v.                                                          No. 09-CV-1014
                                         (GLS/DRH)

HONORABLE DAVID PATERSON, Governor,
The State of New York; MR. ANDREW
CUOMO, Attorney General, The State of New
York; MR. BRIAN FISCHER, Commissioner,
Department of Correctional Services; MR.
DALE ARTUS, Superintendent, Clinton
Correctional Facility; MR. PETE FREDERICK,
Chairperson, Clinton CF Media Review
Committee; and MR. J. KOWALSKI,
Chairperson, Clinton CF Media Review
Committee,

                            Defendants.
_____

**APPEARANCES:**                         **OF COUNSEL:**

NORMAN B. CALVERT
Plaintiff Pro Se
AMBASSADOR OF CAPRICE
THE KINGDOM OF HEAVEN
3660 Waldo Avenue
Suite 4B
Riverdale, New York 10463-2225

HON. ERIC T. SCHNEIDERMAN            DOUGLAS J. GOGLIA, ESQ.
Attorney General for the                    Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Norman B. Calvert, an inmate formerly in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that the Governor and Attorney General of New York, the DOCS

Commissioner, and three DOCS employees violated his constitutional rights under the First,

Fourth, Fifth, Ninth, and Fourteenth Amendments.  Am. Compl. (Dkt. No. 8).  Presently

pending is defendants' motion for a judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c).  Dkt. No. 19.  Calvert has not responded to the motion.  For the following reasons, it

is recommended that defendants' motion be granted.


**I. Background**

The facts are related herein in the light most favorable to Calvert as the non-moving

party.  See Ertman v. United States, 165 F.3d 204, 206 (2d Cir.1999).

In 1982, inmates at the Auburn and Clinton Correctional Facilities brought consolidated

class actions against officials at those facilities and DOCS alleging that the defendants were

violating inmates' rights under the First and Fourteenth Amendments by their policies

regarding inmates' receipt of publications mailed or received at the correctional facilities.

Dkt. No. 19-3 [hereinafter "Dumont Stip."] at 1-2.  The cases were resolved by a stipulated

settlement in 1983.  Id.  The stipulation required DOCS, inter alia, to amend its policy

contained in DOCS Directive 4572 regarding what publications could be received by

inmates and to provide training to any individuals who served on a facility's Media Review

---

[1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Committee, which was responsible for implementing Directive 4572.  Id.

   Calvert contends that DOCS has failed to comply with the provisions of Directive 4572 and the Dumont stipulation.  Am. Compl. ¶ .   Calvert contends that defendants have not been training members of the media committees as enumerated in paragraph 22 of the Dumont stipulation.  Id. ¶¶ 22-24.  Calvert attempted to obtain records documenting DOCS alleged training compliance through Freedom of Information Law (FOIL) requests which all went unanswered.  Id. ¶¶ 25-28.  Moreover, due to defendants non-compliance, Calvert has been "unlawfully den[ied] . . . access to [his] 'research' magazines . . . ."  Id. ¶ 37.  Calvert provides no additional information about the type of research magazines to which he referred, what their contents were, or why they were disallowed at the facility.  Calvert has also stated that he "did not exhaust administrative remedies in this action; since all administrative remedies were properly exhausted way back in 1982 . . . ." (id. ¶ 16) and that he could not "imagine how any further exhaustion . . . can be required . . . especially since it is simply a revisiting a ruling made over a quarter century ago."  Id. ¶ 18.


## II.  Discussion

   In Calvert's amended complaint, he alleges a violation of his First Amendment rights when defendants refused to provide him, and other inmates similarly situated, their "research magazines."[2]  Additionally, liberally construing Calvert's contentions, he has also

_____

   [2] The caption on the amended complaint indicates that Calvert brings this as a class action suit.  However, inmates "lack[] standing . . . to assert . . . claims on other inmates' behalf."  Swift v. Tweddell, 582 F. Supp. 2d 437, 449 (W.D.N.Y. 2008); see also Singleton v. Wulff, 428 U.S. 106, 113-14 (1976) (discussing the reasons why federal courts do not allow plaintiffs to assert a third party's constitutional claims on their behalf), Kane v. Johns-Manville Corp., 843 F.2d 636, 643 (2d Cir. 1988) ("Generally, litigants in

alleged a due process violation for DOCS' failure to comply with its own provisions and adequately train its own employees.  Defendants move to dismiss the amended complaint because Calvert has failed to (1) exhaust his administrative remedies and (2) allege the personal involvement of defendants Paterson, Cuomo, Fischer, and Artus.[3]


## A. Legal Standard[4]

   "The standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v.

---

federal court are barred from asserting the constitutional . . . rights of others in an effort to obtain relief for injury to themselves.").

   [3] As defendants have only raised procedural arguments in connection with their motion to dismiss, the merits of Calvert's claims need not be addressed.

   [4] Generally, consideration of a motion for judgment on the pleadings "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  As Calvert has attached a portion of the Dumont Stipulation to his complaint and relies upon its provisions, in conjunction with DOCS directive 4572, both of those documents were considered in this decision.  Defendants provided complete copies of both the stipulation and directive as attachments to their motion.  Dkt. No. 19-3 – 19-4.

4

Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action . . .

[as] courts are not bound to accept as true a legal conclusion couched as a factual

allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . .

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining

that the plausibility test "does not impose a probability requirement . . . it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

[conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n

a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .

.") (citations omitted).  Determining whether plausibility exists is "a content specific task that

requires the reviewing court to draw on its judicial experience and common sense."  Iqbal,

129 S. Ct. at 1950-51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled
> to "special solicitude," . . . that a pro se litigant's submissions must be
> construed "liberally,". . . and that such submissions must be read to raise the
> strongest arguments that they 'suggest. . . . .  At the same time, our cases
> have also indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . or arguments that
> the submissions themselves do not "suggest, . . ." that we should not "excuse
> frivolous or vexatious filings by pro se litigants" . . . and that pro se status
> "does not exempt a party from compliance with relevant rules of procedural
> and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

### B. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83 (2006). This exhaustion requirement applies to all prison condition claims. Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

Exhaustion for an inmate in DOCS custody is generally achieved through the Inmate Grievance Program (IGP).[5] See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1, et seq.. In addition to the IGP program, the Dumont Stipulation and DOCS directive 4572[6] both provide

---

[5] "The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

[6] This directive, modified by the Dumont Stipulation, provides guidelines about the types of media and publications permitted in DOCS facilities, how unauthorized materials are removed and disposed of, and how inmates may appeal unfavorable decisions and

an administrative remedy.  Directive 4572 provides a procedure for inmates who have had publications confiscated by the Facility Media Review Committee ("FMRC"), to appeal the denial in writing to the Central Office Medical Review Committee ("CORMC").  Dkt. No. 19-4, (III)(A)-(G); see also Dkt. No. 19-3, ¶ 10 (explaining identical appeal provisions directing inmates to inter *alia* appeal to the COMRC in the event the FMRC confiscates an inmate's media).

The PLRA, and its exhaustion requirements, do not apply to a former inmate who commenced a federal action concerning conditions of his or her DOCS confinement after release from custody.  Greig v. Goord, 169 F.3d 165, 167 (2d Cir. 1999).  However, when a prisoner has been released from prison during the pendency of the action, yet failed to exhaust his administrative remedies, such failure will not be excused if the inmate had an "ample" opportunity to exhaust prior to his release.  See Berry v. Kerik, 366 F. 3d 85, 88 (2d Cir. 2003).  In this case, Calvert has been released from DOCS custody.  However, Calvert filed both the initial and amended complaints while he was incarcerated.  Dkt. Nos. 1, 8. The initial complaint was filed on September 8, 2009 and the amended complaint on March 26, 2010.  Thus, Calvert was incarcerated for at least seven months after the refusal of defendants to provide him with his "research magazines."  Dkt. Nos. 1, 8.  This constituted an ample opportunity for him to exhaust his administrative remedies.  See Berry, 366 F.3d at 88 (discussing the appropriateness of a dismissal for failure to exhaust where an inmate remained incarcerated for "several months after the onset of the conditions that gave rise to his complaints and prior to his release").  Accordingly, Calvert was required to exhaust his

denials of materials.  Dkt. No. 19-4.

administrative remedies while incarcerated.

In his amended complaint, Calvert indicated that he neither exhausted, nor felt the need to exhaust, his particular administrative remedies in the present case.  Am. Compl. ¶¶ 16, 18.  While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  When inmates fail to follow the administrative procedures, a court must conduct a three-part inquiry to determine if such failure is fatal to their claims.  A court must consider whether

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).  Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of."  Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible.  Id. at 688.

In this case, even construing the facts in the light most favorable to Calvert, there is no indication that administrative remedies were unavailable to him.  By continually citing to and relying upon the Dumont Stipulation and Directive 4572, it cannot be said that Calvert was unaware of the administrative remedies outlined by both policies.  Additionally, there is nothing in the record to indicate that Calvert was unaware of how to use the IGP or that any of the actions of defendants rendered unable to engage in any of the administrative

8

procedures.  Conversely, Calvert's own submissions indicate that he felt that exhaustion simply was unnecessary.

Accordingly, defendants' motion on this ground should be granted.

### C. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
>  (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Caplvert names defendants Governor Paterson and Attorney General Cuomo in the present suit because they are "ultimately responsible for all the actions of all of its officers"

9

and "ultimately responsible for all of the Legal Decisions being made in the State of New York . . . . ." Am. Compl. ¶¶ 9-10.  Similarly, defendants Commissioner Fischer and Superintendent Artus were named because they are "responsible for all the actions of all DOCS employees" and "responsible for all the actions of all of the employees of the Clinton Correctional Facility," respectively.  Id.  ¶¶ 11-12.

Calvert is lies on these defendants' positions as a basis upon which to include them in the present action.   However, a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.  Wright, 21 F.3d at 501. Therefore naming these defendants, based upon their positions of authority alone, is insufficient to establish personal involvement.  Even liberally construing the amended complaint, there is nothing further to suggest that any of these defendants were personally involved with the alleged constitutional violations of restricting the access to the magazines, were grossly negligent in supervising subordinates, or were failing to act upon information Caprice had provided them which identified the constitutional violations.

Accordingly, defendants' motion should be granted and defendants Governor Paterson, Attorney General Cuomo, Commissioner Fischer, and Superintendent Artus should in the alternative be dismissed based upon their lack of personal involvement.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for judgment on the pleadings (Dkt. No.19) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  April 13, 2011
        Albany, New York

David R. Homer
United States Magistrate Judge